Donnell **FLIPPINS**,
Petitioner-Appellant,

v.

**UNITED STATES of America**,
Respondent-Appellee.

No. 85–6091.

United States Court of Appeals,
Sixth Circuit.

Argued Nov. 17, 1986.

Decided Jan. 5, 1987.

Rehearing Denied March 13, 1987.

Martin S. Hume, court appointed, Youngstown, Ohio, for petitioner-appellant.

Hancy Jones, III, Asst. U.S. Atty., Louisville, Ky., Terry Cushing, argued, for respondent-appellee.

Before MERRITT and WELLFORD, Circuit Judges, and EDWARDS, Senior Circuit Judge.

WELLFORD, Circuit Judge.

This case raises the single issue of ineffective assistance of counsel in the alleged failure to exercise minimal diligence in investigating the circumstances of an underlying conviction with respect to a charge of violating federal statutes that prohibit convicted criminals from possessing firearms. We previously considered an appeal from Flippins' conviction in 1984 and remanded the case to the district court for an evidentiary hearing on the merits of his claim. *See Flippins v. United States*, 747 F.2d 1089, 1092 (6th Cir.1984). At the hearing on remand, the district judge found that appellant's trial counsel had rendered reasonably competent assistance and that appellant's testimony to the contrary lacked credibility. He therefore denied appellant's petition. For the following reasons, we AFFIRM the district court's order.

Appellant Donnell Flippins is currently serving a ten year sentence on one count of criminal possession of a forged instrument, and one count as a first degree persistent felony offender. Both counts originated under Kentucky law. The persistent felo-

ny offender conviction was based on a 1971 federal felony conviction following charges of an attempt to board an aircraft with a weapon, unlawful possession of a firearm, and unlawful transportation of a firearm. The statutes on which the second and third counts were based prohibited a convicted felon from possessing a firearm and from transporting a firearm through interstate commerce, and evidence indicated that in 1969 Flippins had pleaded guilty to Kentucky criminal charges of attempted robbery and carrying a concealed weapon. Flippins pleaded guilty to all three counts in 1971. His petition for a writ of error coram nobis challenges the 1971 conviction on the basis of ineffective assistance of counsel.

At the evidentiary hearing mandated by this court's 1984 decision, Flippins testified that his appointed counsel in the 1971 case, Paul Murphy, spent only a few minutes with him on the day that he entered the guilty plea, and that Murphy told him to enter the plea on the understanding that Murphy would talk to the district court judge to secure a suspended sentence. He also testified that at the time he entered the guilty plea, he responded affirmatively to the questions the judge asked him because his attorney told him to do so. Flippins further testified that he had not been convicted of a felony in 1969 in the Kentucky court, and that he so advised Murphy.

Murphy, on the other hand, testified that he interviewed Flippins for two hours on March 11, 1985, four days before the sentencing took place. He stated that Flippins told him that he thought possibly his *Miranda* rights had been violated, and that when he went to board the aircraft, he had the pistols in a dop kit and was told by the airlines to carry his dop kit on board. Murphy testified that he researched the statutes and determined that intent was not an essential element to the crime of boarding aircraft with a weapon. He also testified that he conferred with the United States Attorney and was then advised of incriminating statements Flippins made to the law enforcement authorities. He also learned about testimony the government would present regarding Flippins' attempt to board the aircraft with firearms. In light of information about Flippins' admission that he had the firearms with him, and because he had determined that intent was not an element of the crime, Murphy advised Flippins that in his view Flippins had no real defense to the aircraft charge. Murphy also said that he had consulted with Flippins about the *Miranda* violation defense, and advised him that he felt that such a defense would be futile but that he would pursue it if Flippins so desired. Flippins allegedly then responded that he did not desire to pursue it, and Murphy did not request a hearing to contest the circumstances of his giving an inculpatory statement.

Murphy also testified that Flippins acknowledged that he had been convicted in 1969 and never raised any issue of the validity of that conviction. Furthermore, reading the copy of Flippins' 1969 conviction did not, on its face, raise any questions about its validity in Murphy's mind. The district court acknowledged Murphy's expertise in Kentucky criminal law. Murphy not only practices criminal law in Kentucky, but also helped draft the Kentucky penal code and taught criminal procedure at the University of Kentucky law school.

The district court then considered the testimony, found Murphy's testimony to be credible, and found that Flippins' contradictory testimony was not credible. The district court concluded that Murphy had rendered reasonably effective assistance and therefore denied Flippins' writ of error. Flippins now appeals that order.

The primary issue before this court is whether Murphy's failure to investigate the validity of the 1969 conviction constituted ineffective assistance of counsel. The United States Supreme Court recently set forth the standard for determining whether a defendant received effective assistance of counsel as required by the sixth amendment. In *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674

(1984), the Court enunciated a two-prong test. First, the defendant must show that "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id.* at 687, 104 S.Ct. at 2064. Second, the defendant must show prejudice by showing that the errors were so serious as to deprive him of a fair trial. *Id.* Elaborating on the reviewing court's role in applying this test, the Court stated:

> Judicial scrutiny of counsel's performance must be highly deferential. It is all too tempting for a defendant to second-guess counsel's assistance after conviction or adverse sentence, and it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable.... [A] court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance....

*Id.* at 689, 104 S.Ct. at 2065; *see also Krist v. Foltz*, 804 F.2d 944, 948 (6th Cir.1986) (quoting *Strickland*). Addressing counsel's duty to investigate, the Court asserted:

> The reasonableness of counsel's actions may be determined or substantially influenced by the defendant's own statements or actions. Counsel's actions are usually based, quite properly, on informed strategic choices made by the defendant and on information supplied by the defendant. In particular, what investigation decisions are reasonable depends critically on such information.

*Id.* 466 U.S. at 691, 104 S.Ct. at 2066.

■ The "information supplied by defendant" is a matter of dispute in this case. At the evidentiary hearing, Flippins testi-fied that he told Murphy he was never convicted. Murphy, however, saw a copy of the conviction and testified that Flippins acknowledged the conviction and never raised an issue of its validity. The district court believed Murphy's testimony to be credible. This court must defer to the district court's findings of fact, particularly on issues of credibility. We, therefore, must accept as fact Murphy's testimony that Flippins never alerted him to any infirmity in the conviction.

Flippins contends that the conviction raises doubts on its face because the court withheld "rendition of judgment" and that this language in the judgment of conviction should have prompted Murphy to investigate its validity. Murphy, however, an acknowledged expert on Kentucky law, testified that withholding rendition of judgment is merely an old form Kentucky state courts used to suspend sentence and impose probation.[1] The Kentucky court thus *imposed* judgment against Flippins, but placed him on probation rather than *rendering* judgment by making him serve the full time in prison on the first count of the indictment. We find that the judgment of conviction reasonably raised no question in the attorney's mind of the validity of the conviction.

■ The Supreme Court has determined that a guilty plea, followed by a sentence of probation, is enough to constitute a "conviction" for the purposes of federal gun control statutes. *See Dickerson v. New Banner Institute, Inc.*, 460 U.S. 103, 114, 103 S.Ct. 986, 992, 74 L.Ed.2d 845 (1983). The Court has also asserted that "the mere fact of conviction, or even indictment" meets the "conviction" requirement of federal gun control statutes, regardless of questions concerning the validity of the

---

1. The sentence imposed by the Kentucky state court included the following language:

> The court ... finds the defendant guilty as per his plea and fixes his punishment at confinement in the penitentiary for a term of ten years as to Count 1 of the indictment....
> The defendant Flippins moved to "withhold rendition of the judgment." The court then stated:

> The court ... sustains said motion on the condition that the defendant remain on his good behavior and refrain from any similar trouble for a period of five years after serving his sentence received in Count 2....
> The court imposed costs on Flippins and further ordered "that he be confined in the County Jail for a period of six months ... [for Assault and Battery]."

conviction. *See Lewis v. United States,* 445 U.S. 55, 67, 100 S.Ct. 915, 921, 63 L.Ed.2d 198 (1980). Flippins cites cases focusing on Oklahoma law to determine whether a "conviction" occurred. *See United States v. Parker,* 604 F.2d 1327 (10th Cir.1979); *United States v. Stober,* 604 F.2d 1274 (10th Cir.1979). The Supreme Court has expressly stated, however, that whether a "conviction" exists within the meaning of federal gun control statutes is a question of federal, not state, law. *See Dickerson,* 460 U.S. at 111–12, 103 S.Ct. at 991. If Flippins entered a guilty plea in the 1969 conviction, therefore, he was "convicted" for the purposes of the 1971 firearms possession and transportation charges.

Flippins testified that he pleaded guilty in 1969, but that he "never entered a courtroom" and never entered the plea before a judge. He testified that he only pleaded guilty before his attorney and the prosecutor. The district court simply did not believe this testimony, and, again, we give deference to the district court on this question of credibility. The district court found that Flippins did not tell Murphy what he later related in his testimony and a reasonably competent attorney would have no reason to suspect the validity of a judgment appearing regular on its face. Given the "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance," *Strickland,* 466 U.S. at 689, 104 S.Ct. at 2066, we find that Murphy rendered adequate and effective assistance with respect to the underlying conviction.

Addressing Flippins' contention that Murphy coerced him into pleading guilty by telling Flippins he was a friend of the district judge and would secure a suspended sentence, the district court simply found that Flippins' testimony was not believable. Concerning Flippins' charge of inadequate preparation, the district court believed

Murphy's testimony about his interviews with Flippins and the United States Attorney prior to submission of the guilty plea and his other testimony about his research, his determination that Flippins had not valid defense, and his reviewing the guilty plea requirements with Flippins before he went before the judge to enter his plea. Substantial evidence supports these findings of fact. In sum, Flippins has failed to persuade us that his attorney failed to meet the Supreme Court's standards regarding the sixth amendment's guarantee of "counsel." We therefore AFFIRM the district court's order.